UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRIAN CORBETT and EVA CORBETT, husband and wife,<br><br>Plaintiff,<br><br>v.<br><br>PROVIDENCE HEALTH PLANS and PROVIDENCE HEALTH & SERVICES - OREGON,<br><br>Defendant. | CASE NO. 3:12-cv-6047-RJB<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the court on the Motion for Summary Judgment (Dkt.17) filed by Defendants Providence Health Plan ("PHP") and Providence Health & Services – Oregon ("PHS-OR"). The court has considered the relevant record and the remainder of the file herein.

PROCEDURAL HISTORY

Brian and Eva Corbett sued PHP and PHS-OR to recover sums allegedly due under an Employee Retirement Income Security Act ("ERISA") welfare benefit plan. Dkt. 1-1. Because

this is a civil action involving a federal question, PHP and PHS-OR removed the case from Clark County Superior Court to this Court pursuant to 28 U.S.C. § 1331. Dkt. 1.

On August 9, 2013, Defendants moved for summary judgment (Dkt. 17), arguing that that the sums were validly withheld pursuant to the ERISA plan's terms. Dkt. 17. Plaintiffs filed their Response on September 9, 2013, (Dkt. 20), and the Defendants filed their Reply on September 27, 2013 (Dkt. 24).

## ERISA

An ERISA plan is an employee welfare benefit plan established or maintained by an employer for the purpose of providing benefits in the event of disability for its participants through the purchase of insurance or otherwise. 29 U.S.C. § 1001 *et seq*.

A participant in an ERISA plan may bring an action under ERISA to recover benefits allegedly due under the terms of the plan or to enforce his or her rights under the terms of the plan. 29 U.S.C. § 1132(a). ERISA's civil enforcement provisions provide the exclusive remedies for persons seeking benefits under an ERISA plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). ERISA preempts state laws providing alternative enforcement mechanisms for ERISA plan benefits as well as state laws that mandate employee benefit structures or their administration. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998)(quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers*, 514 U.S. 645, 658 (1995)).

## RELEVANT FACTS

***The Parties***. Plaintiffs Brian and Eva Corbett are beneficiaries under a health benefits plan (the "Plan") maintained by Brian Corbett's employer, PHS-OR. Dkt. 18, at 2. Defendant PHS-OR is neither a governmental entity nor a religious institution, so its health plan is governed by ERISA. Dkt. 18, at 1; 29 U.S.C. § 1003. Co-Defendant PHP is a health-care service

1  contractor licensed and regulated under ORS ch. 750.  Dkt. 18, at 1.  In that capacity, it issues

2  contracts providing health coverage, among others, to employer groups that operate ERISA

3  welfare benefit plans.  *Id.*  PHS and PHS-OR are collectively referred to here as "Providence."

4    *The Collision*.  The Corbetts were injured in a motor vehicle collision on December 30,

5  2007.  Dkt. 19-1, at 3.  Providence claims that it paid $8,103.44 for Ms. Corbett's care and

6  $619.60 for Mr. Corbett's care pursuant to the Plan in effect at the time of the collision.  Dkt. 17,

7  at 2.  The Corbetts point out that they had liability coverage at the time through Progressive

8  Insurance, but no other no-fault coverage, such as personal injury protection coverage or

9  underinsured motorist coverage.  Dkt. 21, at 1.

10   *Settlement.*  In April of 2010, the Corbetts reached a settlement with the party that

11 injured them in the 2007 vehicle collision.  Dkt. 18, at 2.  The responsible party's insurance

12 carrier informed Providence of the settlement approximately one year after the settlement.  *Id.*

13 Providence argues that the Corbetts' failure to notify Providence of the settlement is a failure to

14 abide by the Plan.  *Id*; Dkt. 17, at 2.

15   Providence also argues that the Plan required the Corbetts to reimburse Providence from

16 any settlement the Corbetts received.  Dkt. 17, at 3.  Accordingly, Providence demanded a full

17 reimbursement of the $619.60 paid for Mr. Corbett's expenses and the $8,103.44 paid for Ms.

18 Corbett's expenses, but the Corbetts apparently refused the demand.  *Id.* at 4.

19   *Recoupment by Offset.*  Ms. Corbett gave birth in March of 2012, and she incurred a

20 number of expenses related to her maternity.  Dkt. 20, at 2.  Because Providence had not yet been

21 reimbursed for the 2007 collision payments, Providence declined payments equal to the amount

22 that the Corbetts had failed to reimburse: a sum of $619.60 and $8,103.44.  Dkt. 19-1, at 20; Dkt.

23 19-6, at 26.  Providence derived authority for this offset from a provision in the 2011 version of

24

the Plan. Dkt. 17, at 3. The Corbetts argue that this offset was invalid because the provision relied upon by Providence was not in the 2007 version of the Plan, which was in effect at the time of the collision. Dkt. 20, at13.

Seeking the amount offset from Ms. Corbett's maternity expenses, the Corbetts appealed Providence's denial of payments. Dkt. 19-1, at 2. Providence denied their appeal. *Id.* The Corbetts then initiated this suit to recover that amount. Dkt. 1-1. Providence counterclaimed seeking a declaration that the offset was valid. Dkt. 6.

## ISSUES

The Court must determine 1) whether Providence is entitled to a deferential standard of review, (2) whether Providence has a right to reimbursement of medical payments relating to the 2007 collision, (3) whether Providence properly amended the Plan to add the offset provision, and (4) whether Providence can collect those payments pursuant to the 2011 Plan's offset provision.

## DISCUSSION

**1.     The Proper Standard of Review.**

    a.     Plan Language.

In evaluating ERISA benefit claims, the court's standard of review depends on whether the Plan gives the administrator the discretion to make benefit decisions. A "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Providence argues that the Plan gave PHP discretionary authority to act as the claims administrator. Dkt. 24, at 2.

1  There are three provisions relevant to whether or not the Plan affords PHP discretionary

2 authority. First, the Plan's opening paragraph provides: "These plans are . . . administered by

3 Providence Health Plan." Dkt. 19-3, at 2; Dkt. 19-2, at 2.

4  The second relevant provision is provided by the Administrative Services Agreement

5 ("ASA"), by which PHP administered the Plan. Section 5.2 of the ASA addresses "Claim

6 Processing," and grants PHP broad discretionary authority in making benefit decisions. "We"

7 and "Us" refers to PHP, the administrator, and "You" refers to PHS-OR:

> We will determine whether a benefit is payable under the Plan's provisions, and We will use claim procedures and standards that we develop for benefit claim determination. With respect to these functions, **You delegate to Us the discretionary authority to (a) construe and interpret the terms of the Plan**; (b) make factual determinations relating to any benefit decision; (c) determine the validity of charges submitted to Us under the Plan; and (d) **otherwise decide all questions regarding a Member's eligibility for benefits under the Plan. Benefits shall be payable to a Member under the Plan only if We, in Our discretion, determine that such benefits are payable.**

13 Dkt. 19-4, at 10; Dkt. 19-5, at 10 (emphasis added).

14  The third provision relevant to the administrator's discretionary authority in the 2011

15 version of the Plan is in a section titled "Other Requirements for Receiving Covered Services"

16 on page 24: "Providence Health Plans has the legal right to determine which medical Conditions

17 are covered by your plan, and to what extent the Conditions are covered." Dkt. 19-2, at 25.

18  b.  <u>The Administrator's Decision is Entitled to Deferential Standard of Review</u>.

19  ERISA benefit claims are reviewed under a deferential standard if the benefit plan gives

20 the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

21 construe the terms of the plan. *Firestone Tire*, 489 U.S. at 115. Where an ERISA plan vests the

22 administrator with such discretionary authority, a district court may review the administrator's

23 determination only for an abuse of discretion. *Winters v. Costco Wholesale Corp.*, 49 F.3d 550,

24

552 (9th Cir.), cert. denied, 516 U.S. 908 (1995). A decision by an administrator is not an abuse of discretion unless the decision is rendered without any explanation, or provisions of the plan are construed in a way that conflicts with the plan language, or the decision is so patently arbitrary and unreasonable as to lack foundation in factual basis. *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1472-73 (9th Cir. 1993). Where the abuse of discretion standard applies, the district court may review only evidence presented to the plan trustees or administrator. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999); *Winters*, 49 F.3d at 553.

If the plan does not give the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, or if a decision to terminate benefits was tainted by a conflict of interest, the *de novo* standard applies. *Firestone*, 489 U.S. at 115; *Tremain v. Bell Industries*, 196 F.3d 970, 976-77 (9th Cir. 1999).

Here, the Plan unambiguously granted authority to the administrator to administer the Plan. The Plan also unambiguously granted the administrator the authority to determine the extent to which Members' medical conditions are covered by the Plan's terms. Plan language that grants the power to interpret plan terms and to make final benefits determinations is sufficient to confer discretion on the plan administrator. *See Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir. 2006) (citing e.g., *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.,* 239 F.3d 1139, 1142 (9th Cir. 2002)); *Firestone,* 489 U.S. at 111 (if a plan grants an administrator the right to determine eligibility for benefits or to construe the terms of the plan, it has discretionary authority).

Moreover, the ASA is part of the Plan. The member handbook granted authority to PHP to administer the Plan, which integrated the agreement by which this administration was done: the Administrative Services Agreement. Cases have considered additional documents part of the

1  plan "when they are integrated with the plan itself in some way." *Rada v. Cox Enterprises, Inc.*,

2  2012 WL 3262867 *4 (D. Nev. 2012). The ASA provided additional terms by which the Plan

3  operated and benefits were provided to plan participants. The reference to the administrator in

4  the member handbook would be useless without the arrangement established in the ASA, which

5  unambiguously bestowed broad and complete discretion upon the administrator.

6        The Corbetts recognize the sufficiency of the ASA's language, but they dispute whether

7  the ASA was part of the Plan. The Corbetts argue first that the ASA is not a plan document

8  because it does not "address . . . the terms on which payments will be made." Dkt. 20, at 7–8.

9  Indeed, 29 U.S.C. § 1102(b)(4) requires that every employee benefit plan specify the basis on

10 which payments are made to and from the plan. However, the ASA is a Plan document—not an

11 entire Plan in and of itself. ERISA contains no requirement that every plan document resemble

12 an entire insurance policy. Furthermore, the ASA *does* specify the basis on which claims for

13 Plan benefits are processed and paid: *See* Dkt. 19-4, at 10; Dkt. 19-4, at 10. The following is an

14 example: "We will determine whether a benefit is payable under the Plan's provisions . . . If We

15 determine that a benefit is payable, We will issue a check for, or otherwise credit, the benefit

16 payment to the appropriate payee." *Id.*

17       The Corbetts also argue that the ASA is not a plan document because it was not

18 distributed to employees. ERISA only requires that plan participants be furnished with a

19 Summary Plan Description and summaries of new amendments. *Curtiss-Wright Corp. v.*

20 *Schoonejongen*, 514 U.S. 73, 83 (1995) (citing 29 U.S.C. § 1024(1)). Other plan documents

21 need only be available for examination by plan participants. *Id.* (citing 29 U.S.C. § 1024(2)).

22 Providence's 2007 and 2011 member handbooks notify all plan participants of this right in their

23

24

1 respective ERISA sections, and members receive new handbooks annually that update them of

2 any new amendments.   Dkt. 19-2, at 80; Dkt. 19-3, at 63; Dkt. 25, at 2.

3     The Corbetts further rely on *CIGNA Corp. v. Amara*, __ US __, 131 S.Ct. 1866 (2011) to

4 argue that the ASA is not a plan document.  But *Amara* held that summary plan descriptions are

5 not plan documents because summaries are "about" the plan, not part of the plan.  *Id.* at 1878.

6 The ASA is neither a summary plan description, nor a document that summarizes the Plan.  The

7 member handbook, contrary to what the Corbetts seem to imply through *Amara*, is not the only

8 plan document.

9     Finally, the Corbetts rely heavily on *Rada v. Cox Enterprises, Inc.,* 2012 WL 3262867.

10 Although *Rada* held that the Administrative Services Contract ("ASC") was not part of the plan,

11 analysis is absent regarding the ASC's language, the ASC's function, or the Plan's language

12 integrating the ASC.  *See* WL 3262867 at *4.  *Rada* contains little more than a declaration that

13 the ASC was not part of the plan.  *Id.*  Moreover, the language granting discretion in *Rada* was

14 far narrower than the language in this case.  For these reasons, and because *Rada* is not

15 controlling, *Rada* does not persuade the Court that the administrator in this case acted

16 unreasonably in treating the ASA as a plan document.

17     Accordingly, deferential review of the administrator's decision is proper because the Plan

18 granted the administrator discretionary authority

19 **2.    Providence's Right to Reimbursement.**

20     a.    Plan Language.

21     Providence derives its right to reimbursement from a provision in effect at the time of the

22 collision.  *See* Dkt. 24, at 8.  This reimbursement provision is found on page 43 of the 2007 Plan

23 in a section titled "Benefits from Other Sources."  Dkt. 19-3, at 43.  This section addresses the

24

scenario where, as here, a third party pays for a plan member's medical expenses because they injured the plan member:

> Sometimes, a third party pays for a member's medical expenses because the member was injured by them. . . In these types of situations, your Plan coverage is secondary. . . **By accepting membership in the Plan, you make an agreement with us – if you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment**. . . **Before you accept any settlement, you must let us know the terms,** and tell the third party that we have an interest in the settlement. If you have medical bills after you receive a settlement, we will not pay those bills until your settlement is exhausted.

Dkt. 19-3, at 43 (emphasis added). The 2011 version of the Plan contains an identical provision. Dkt. 19-2, at 66. Providence argues that this provision created a duty on behalf of the Corbetts to not only notify Providence before accepting the settlement, but also to reimburse Providence for the cost of the treatment. Dkt. 17, at 2–3.

        b.     <u>The 2007 Plan Established Providence's Right to Reimbursement</u>.

The Plan in effect at the time of the collision contained a provision requiring the Corbetts to reimburse Providence out of any third-party settlement. Providence's right to reimbursement is established by this provision, and not by a provision newly amended to the 2011 Plan. Contrary to the Corbetts' arguments, Providence is not retroactively applying a new amendment. Providence is simply enforcing an obligation that was in effect at the time of the accident, and, more importantly, in effect at the time of the payments.

Moreover, the payments to the Corbetts had not vested through payment because they were always subject to a right of reimbursement. The rule, upon which the Corbetts rely, as well as the authority they cite, provides that a new amendment cannot be retroactively applied to deny *vested* benefits. *See Member Services Life Ins. Co. v. American Nat. Bank & Trust Co. of Sapulpa*, 130 F.3d 950 (10th Cir. 1997) (the payments to the beneficiaries "vested through payment" because they were not subject to a right of reimbursement at the time of payment. The

1 reimbursement provision was amended to the plan *after* the payments were made). Vested

2 benefits are those unalterably and irrevocably conferred. *Hargrave v. Commonwealth Gen.*

3 *Corp's Long Term Disability Plan*, 430 F. App'x 256, 261 (5th Cir. 2011) (citing *Halliburton*

4 *Co. Benefits Comm. v. Graves*, 463 F.3d 360, 377 (5th Cir. 2006).

5     *Confer v. Custom Engineering Co.,* 952 F.2d 41 (3d Cir. 1991) is not on point. *Confer*

6 established that a plan cannot be amended after an injury to prevent coverage of that injury.

7 Providence's right to reimbursement was established before the Corbetts' collision, and not by a

8 subsequent amendment.

9 **3.      Providence's Right to Amend the Plan.**

10     a.        <u>Plan Language</u>.

11     Providence derived authority to amend the Plan from an amendment provision present in

12 both the 2007 and 2011 versions of the Plan. Page 64 of the 2007 Plan, for example, addressed

13 "Amendment or Termination of Plan":

> **The employer sponsor of your group plan reserves the right at any time to amend or terminate in whole or part any of the provisions of the plan or any of the benefits provided under the plan**. **Any such amendment or termination may take effect retroactively or otherwise**. In the event of a termination or reduction of benefits under the plan, the plan will be liable only for benefit payments due and owing as of the effective date of such termination or reduction and no payment scheduled to be made on or after such effective date will result in any liability to the plan or your employer.

Dkt. 19-3, at 64 (emphasis added). The amendment provision in the 2011 Plan is identical. Dkt. 19-2, at 81.

    b.        <u>The Plan Was Validly Amended</u>.

    In disputing Providence's reimbursement rights, the Corbetts challenge the validity of the Plan's amendments. Dkt. 20, at 13. The Corbetts argue briefly that Providence failed to provide sufficient evidence that it complied with the Plan's procedures in amending the Plan. *Id.*

Providence refutes these arguments in its Reply by providing "the main plan document" in effect since 2003, the member handbooks in effect between 2007 and 2011, and the summary plan descriptions for the years 2007 through 2011. *See* Dkt. 26-33; Dkt. 35-40. Without considering these documents, which the Court has refrained from doing pursuant to the Corbetts' Surreply, the record is unclear as to the process by which the Plan was amended. Nonetheless, the 2007 and 2011 Plans provided that the plan may be amended at any time. The Corbetts have not come forward with any evidence—only argument—showing irregularity in the amendment process. The member handbook provides that plan participants will receive notice if there is a change in benefits. Providence provided this notice by providing member handbooks to plan participants each year, apprising them of any new terms. Dkt. 25, at 2.

**4.     Providence's Right to Offset the Collision Payments from Potential Maternity Payments.**

      a.     <u>Plan Language</u>.

To enforce its right to reimbursement in 2011, Providence relied on an offset provision that was present in the 2011 version of the Plan but was not present in the 2007 version. This provision is found in the "Claims Administration" section of the 2011 Plan, beginning on page 65. In pertinent part, the provision gave Providence the right to deduct excess benefits already paid from any future benefit:

> The Plan has the right, upon demand, to recover from a recipient the value of any benefit or claim payment that exceeded the benefits available under the Member's benefit plan. **This right of recovery applies to any excess benefit, including (but not limited to) benefits obtained through fraud, error, or duplicate coverage relating to any Member. If timely repayment is not made, the Plan has the right, in addition to any other lawful means of recovery, to deduct the value of the excess benefit from any future benefit that otherwise would have been available to the affected Member(s) from Providence Health Plan under any contract.**

Dkt. 19-2, at 63 (emphasis added).

The Corbetts also argue that the settlement proceeds were not "excess benefits." Dkt. 20, at 18. In addition to the discussion of excess benefits provided in the offset provision, both parties treat excluded benefits as excess benefits. *See* Dkt. 17, at 3; Dkt. 20, at 18–21. The 2011 version of the Plan references settlement proceeds in its "Exclusions" section, but the 2007 Plan does not. In pertinent part, page 50 of the 2011 Plan provides:

> Any benefits or services provided under this Plan that are subject to this exclusion are provided solely to assist you and such assistance does not waive the Plan's right to reimbursement or subrogation as specified under Third-party liability, page 64. This exclusion also applies to services and supplies after you have received proceeds from a settlement as specified in the Benefits From Other Sources section, pages 64-65.

Dkt. 19-2, at 51. Pages 64-65 of the Plan refer to the "Benefits from Other Sources Section," wherein Providence's right to reimbursement discussed above is provided. Dkt. 19-2, at 66.

b. <u>Providence Validly Used the Offset Provision to Recover Its Reimbursement</u>.

Providence validly collected its reimbursement pursuant to the 2011 Plan. By relying on the offset provision in the 2011 Plan, Providence denied the Corbetts benefits starting in 2011 until Providence had been fully reimbursed for its unreimbursed payments. It was reasonable for Providence to apply 2011 Plan terms in denying 2011 Plan benefits. Providence merely amended its Plan to add a new *method* to collect reimbursements that it already had the right to collect. This is distinguishable from retroactively applying a new amendment to deny prior, vested benefits.

The Corbetts also argue that the settlement proceeds cannot be offset because they do not constitute excess benefits under either the 2007 or the 2011 Plans. Excess benefits are benefits obtained through duplicate coverage. The Corbetts received coverage from Providence and from

the responsible third party's insurance carrier. Though the Corbetts have previously argued that they were not made whole by the settlement, the record is insufficient to establish that they did not receive duplicate coverage. Besides, the Corbetts fail to address the 2011 Plan exclusion that references the reimbursement provisions on pages 64–65 of the Plan. For these reasons, the administrator reasonably concluded that the collision payments were excess payments.

The Corbetts also argue that the 2011 Plan's reimbursement language creates an alternative offset provision. However, this language does not prevent application of the offset provision relied upon by Providence, but merely requires payment for continuing care to come from remaining settlement funds, if there are any.

Finally, the Corbetts argue, apparently for the first time, that Providence has not proven the $8,103.44 and $619.60 in payments were related to the 2007 collision. Dkt. 20, at 21. In calculating these amounts, Providence relied upon the dates that claims were made, specific services that were rendered, and the diagnosis codes used in the claims. Dkt. 25, at 2. The Corbetts have not provided any evidence—only arguments—disputing these amounts. As such, the record is insufficient to establish that Providence acted unreasonably in attributing these amounts to the 2007 collision. Moreover, the Corbetts argued before the administrator that Mrs. Corbett's medical expenses resulting from the collision totaled $30,176.21

**5.      Documents Subject to the Surreply.**

Counsel for Providence attached documents to Providence's Reply that Counsel apparently discovered after the Corbetts filed their Response. Dkt. 24, at 4. The Corbetts object, arguing that these documents should have been provided when all "[r]elevant plan documents were requested in 2011" by the Corbetts. *Id.* They should have been. Many of these documents are clearly and predictably relevant. For example, the Corbetts argue in their Response that the

2011 offset provision was not in effect when the case settled, and the plan in effect at that time should govern. Dkt. 20, at 17–18. In its Reply, Providence supplies the 2010 Plan that would have been in effect at the time of settlement. The plan in effect at the time of settlement is predictably relevant and, like many of the other documents, should have been provided in response to the Corbetts' discovery requests. Providence found them sufficiently relevant to bolster their arguments. Furthermore, a review of these documents leads the Court to conclude that they would only prejudice the Corbetts' arguments. Nevertheless, the Court is within its discretion in not considering the documents in deciding this motion, and has not done so.

## CONCLUSION

The 2007 Plan required the Corbetts to reimburse Providence upon receiving any settlement from a third party. Providence's payments to the Corbetts, therefore, were always subject to Providence's right of reimbursement. Because of this, Providence validly applied the 2011 Plan offset provision. Providence's motion for summary judgment should be granted.

## ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 16) is **GRANTED** and defendants are entitled to judgment of dismissal.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 17th day of October, 2013.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge